MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 135
Docket:        Pen-14-440
Argued:        June 18, 2015
Decided:       October 22, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.


GERALD MARSHALL

v.

TOWN OF DEXTER


SAUFLEY, C.J.

[¶1]  Gerald Marshall appeals from a judgment entered in the Superior Court (Penobscot County, *Anderson, J.*) granting the Town of Dexter's motion to dismiss his civil rights action for failure to state a claim upon which relief can be granted pursuant to M.R. Civ. P. 12(b)(6).  Marshall contends that his complaint sufficiently stated a claim for relief pursuant to 42 U.S.C.S. § 1983 (LEXIS through Pub. L. No. 114-51) and 42 U.S.C.S. § 1988 (LEXIS through Pub. L. No. 114-51), and Maine civil rights laws, *see* 5 M.R.S. §§ 4681-4685 (2014).[1]  We affirm the judgment.

---

[1]  Although Marshall's complaint did not cite to the Maine Civil Rights Act, 5 M.R.S. §§ 4681-4685 (2014), we will consider his state civil rights count because our "notice pleading standard, *see* M.R. Civ. P. 8(a), requires only that the complaint give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief, and then make a demand for that relief." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254 (quotation marks omitted).

## I. STANDARD OF REVIEW

[¶2]   When the trial court acts on a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), facts are not adjudicated; instead the allegations in the complaint are evaluated to determine if there is "any cause of action that may reasonably be inferred from the complaint." *Saunders v. Tisher,* 2006 ME 94, ¶ 8, 902 A.2d 830. When reviewing the trial court's dismissal of a complaint pursuant to Rule 12(b)(6), we view the facts alleged in the complaint as if they were admitted. *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 2, 54 A.3d 710.   We then "examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Moody v. State Liquor & Lottery Comm'n,* 2004 ME 20, ¶ 7, 843 A.2d 43 (quotation marks omitted).   We will affirm a Rule 12(b)(6) dismissal "only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676.   "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" that we review de novo. *Id.* (quotation marks omitted).

## II. BACKGROUND

A.    Facts Alleged

[¶3]   Based on that standard of review, the facts are drawn from the complaint and its attachments.  In September 2011, Gerald Marshall purchased a former school property from the Town of Dexter for $205,000 in an arms-length transaction.  Marshall purchased the property for future redevelopment.  The property consisted of 45.27 acres, with significant shore frontage on Lake Wassookeag.  Structures on the property included two old school buildings and five portable classroom structures.  The school buildings had been vacant for about a year.

[¶4]   The Town initially supported Marshall's redevelopment efforts.  It approved rezoning the property to allow for commercial use and, in October 2012, the Town's Code Enforcement Officer (CEO) approved Marshall's permit application to move the five portable classroom structures to new locations on the property.

[¶5]   About a month before the CEO approved Marshall's permit application, and a year after Marshall had purchased the property, the Town issued a tax commitment for Marshall's property, assessing the value of the property at $1,308,300.  The property had not been previously assessed for tax purposes because of its tax-exempt status as a municipal school property.

4

[¶6] Marshall filed an application for abatement with the Town's municipal assessor, and an administrative hearing was held before the Town's municipal board of assessment review. The board approved a reduction to $381,500 in the assessed valuation of the property. On March 14, 2013, Marshall appealed the reduced valuation to the Superior Court pursuant to 36 M.R.S. § 843(1) (2014) and M.R. Civ. P. 80B. That appeal was pending at the time he filed his complaint in this action, but the court (*Cuddy, J.*) has since affirmed the Town's assessment. *See Marshall v. Town of Dexter*, PENSC-AP-2013-8 (Me. Super. Ct., Pen. Cty., July 15, 2013).[2]

[¶7] On March 21, 2013, one week after Marshall filed his Rule 80B appeal of the tax abatement, the Town's CEO posted a "Stop Work" order on a building located on Marshall's property. Although the order cited a violation of the Uniform Plumbing Code, no plumbing work had been initiated on the premises when the order was posted. Dexter's Land Use Ordinance authorizes the CEO to issue notices of violation, but it does not explicitly authorize the separate issuance of stop work orders. *See* Dexter, Me., Land Use Ordinance § 4(F)(1)(c).[3]

---

[2] The Rule 80B appeal of the reduced tax assessment is the only Rule 80B appeal relevant to this action.

[3] Portions of what purport to be Town Ordinances attached to the complaint indicate that the ordinance may have originally been adopted in 1991 and most recently amended in 2009. The attachments to the complaint also suggest that a property owner may appeal an action of the Code Enforcement Officer to the Board of Appeals.

[¶8]  On April 25, 2013, the CEO issued another document, described as a "Notice of Violation/Order for Corrective Action," that indicated the alleged violation as "Plumbing without [a] permit or licensed master plumber on site and changing the use of land or structure with[out] first obtaining a permit."[4]  At the time that the notice was issued, no plumbing work had been initiated or was underway on the premises, and there had been no change in use since Marshall had purchased the property and obtained the CEO's permit to move the five portable structures.

[¶9]  Marshall and his contractor sought clarification of the stop work order and the notice of violation from the CEO.  The CEO responded that the stop work order and notice of violation prohibited all work of any kind on the property, including routine maintenance and repair work, relocating the five portable classroom buildings, and the removal of a single dangerous tree.  Marshall asserts that the CEO was without the authority, pursuant to the Ordinance, to prohibit these activities.

[¶10]   Based on the actions and statements of the CEO, Marshall's contractor declined to continue work on the property, which "potentially expos[ed] the existing buildings on the property to accelerated deterioration due to exposure

---

[4]    The notice of violation also ordered specific corrective action, stated the penalties for noncompliance, and provided information about the right to appeal the enforcement action to the Dexter Board of Appeals.

6

to the elements." Marshall's complaint alleges that the actions and statements by the CEO were "undertaken for an improper reason, in retaliation for [Marshall's] decision to contest the Town's [tax assessment]."

B. Court Proceedings

[¶11] Marshall did not seek review of the CEO's actions or orders by the Dexter Board of Appeals, although the documentation provided with the record indicates that Board of Appeals review was available to challenge one or more of the CEO's actions. Instead, on May 3, 2013, Marshall sought an ex parte temporary restraining order, M.R. Civ. P. 65(a), from the Superior Court to restrain the Town and the CEO from preventing certain work on Marshall's property. The court (*A. Murray, J.*) denied the TRO request and set the matter for hearing with notice to consider a preliminary injunction. *See* M.R. Civ. P. 65(b).

[¶12] On May 10, 2013, the hearing for the preliminary injunction was held and the court (*Cuddy, J.*) took the motion under advisement. The court later denied Marshall's motion for a preliminary injunction, citing the availability of an adequate remedy at law by appealing the CEO's actions to the Dexter Board of Appeals. By the time the court had signed its decision on June 13, 2013, the time period for appealing the CEO's actions to the Board had expired. *See* Dexter, Me.,

Land Use Ordinance § 5(B)(1) (stating that appeals to the Board "shall be taken within thirty (30) days of the date of the decision appealed from").[5]

[¶13] Also on May 10, 2013, Marshall filed the complaint that is the subject of this appeal. The complaint stated two counts against the Town and the CEO. Count I alleged that the Town's actions "through its municipal code enforcement officer are arbitrary, capricious and without a legal basis." Such actions, the complaint asserted, deprived Marshall of equal protection of law and the use and enjoyment of property, "contrary to the fifth and fourteenth amendments to the United States Constitution and title 42 U.S. Code section 1983." Count II alleged that the Town and CEO violated Marshall's state constitutional rights pursuant to article I, sections 1 and 6-A of the Maine Constitution. The complaint sought relief in the form of a permanent injunction against the Town and the CEO, an award of damages, and an award of attorney fees pursuant to 42 U.S.C.S. § 1988(b).

[¶14] In his brief to us, Marshall includes additional facts and an "offer of proof" that do not appear to have been presented to the Superior Court, although Marshall must have been aware of those facts while the action was pending in the Superior Court. Marshall asserts in his brief that the CEO resigned from her

---

[5] Although it might have been possible to argue that the stop work order was a continuing restraint or action, allowing an appeal to the Board of Appeals at a later time, we need not address that issue, as it does not appear that Marshall ever attempted to appeal the CEO's orders to the Board of Appeals.

8

position on May 13, 2013, and that she has since been replaced. The new CEO, Marshall's brief indicates, "promptly rescinded" the stop work order and notice of violation issued to Marshall and has "worked cooperatively" with Marshall to allow his redevelopment project to proceed.

[¶15] On March 14, 2014, the Town moved to dismiss Marshall's complaint pursuant to M.R. Civ. P. 12(b)(6). The Superior Court (*Anderson, J.*) granted the Town's motion, citing *Town of Shapleigh v. Shikles*, 427 A.2d 460, 466 (Me. 1981), in support of its conclusion that Marshall had failed to exhaust his administrative remedies. Marshall brought this timely appeal.[6] *See* 14 M.R.S. § 1851 (2014); M.R. App. P. 2.

### III. LEGAL ANALYSIS

[¶16] To determine the outcome of Marshall's appeal, we consider each of three grounds that might support the court's dismissal of Marshall's complaint against the Town: (A) Marshall's failure to allege facts demonstrating that the CEO's actions were undertaken pursuant to official municipal policy, (B) Marshall's failure to exhaust the available administrative remedies in the Town before filing a claim for damages, and (C) Marshall's failure to allege facts sufficient to demonstrate a violation of his equal protection rights. The second

---

[6] Marshall's complaint against the CEO was also dismissed. He has appealed only from the dismissal of his complaint against the Town.

count of Marshall's complaint, which alleges a violation of the Maine Constitution due to interference with property and equal protection rights, is interpreted coextensively with his federal civil rights claim brought pursuant to section 1983. *See K v. City of S. Portland*, 407 F. Supp. 2d 290, 298 (D. Me. 2006). Our discussion is therefore driven by the section 1983 claim.

A.    Failure to Plead Employee Action as Municipal Policy

[¶17]   A review of Marshall's complaint reveals no allegation tying the individual CEO's actions to any official policy of the Town of Dexter. A person who seeks to impose liability on a local government through a section 1983 claim must prove that an employee's "'action pursuant to official municipal policy'" caused that person's injury. *Connick v. Thompson*, 563 U.S. 51, 179 L. Ed. 2d 417, 426 (2011) (quoting *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978)); *see also King v. Town of Monmouth*, 1997 ME 151, ¶ 16, 697 A.2d 837; *Lyons v. City of Lewiston*, 666 A.2d 95, 100 (Me. 1995).

[¶18]   "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. 51, 179 L. Ed. 2d at 426. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is

actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). A municipality may be liable pursuant to section 1983 for a single decision by a municipal official "whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *see Pembaur*, 475 U.S. at 480-81.

[¶19] Here, Marshall's complaint failed to allege in any way that the CEO was acting pursuant to an official municipal policy or custom, or that the CEO's actions could fairly be said to represent an official policy or custom. The lack of any allegation of municipal endorsement of the CEO's conduct may be related to the failure to exhaust administrative remedies. If Marshall had pursued the appeal to the Board of Appeals and raised the issue with the Town, the Town might have endorsed the CEO's actions, which would have made it possible for Marshall to allege that the CEO was acting pursuant to—or consistent with—the Town's policies or customs.

[¶20] As pleaded, however, the complaint fails to allege the necessary linkage between the CEO's actions and the Town's official policies or customs. Thus, the action was properly dismissed because the complaint failed to state a claim pursuant to section 1983. *See, e.g., L.L. Nelson Enters. v. Cty. of St. Louis*, 673 F.3d 799, 803-04, 811-12 (8th Cir. 2012) (upholding the dismissal of a complaint alleging municipal liability for one municipal employee's retaliatory

actions because the complaint failed to allege that the municipality had any policy or custom for taking such action).

B.      Failure to Pursue Administrative Relief

[¶21]  The Superior Court dismissed Marshall's complaint because he had failed to appeal the CEO's actions to the Dexter Board of Appeals before filing the civil rights action in Superior Court.  Marshall argues that the Superior Court erred in determining that he had failed to exhaust his administrative remedies because (1) the Board of Appeals lacked jurisdiction over and could not grant the monetary or injunctive remedies sought in his civil rights claim, and (2) appealing to the Board would have been futile because its decision regarding enforcement of the ordinance or a notice of violation would have been advisory and therefore not subject to judicial review.   On both of these points, Marshall's brief misunderstands the law that guided the Superior Court's decision.

[¶22]  "The doctrine of exhaustion of administrative remedies requires a party who seeks an administrative remedy or who challenges an administrative action to pursue that remedy or challenge to a conclusion before the administrative agency prior to initiating action in the courts." *Town of Levant v. Seymour*, 2004 ME 115, ¶ 13, 855 A.2d 1159.[7]  "[T]he rule is primarily designed to allow

---

[7]  There may be a narrow exception to this rule if a plaintiff, failing to exhaust local administrative processes, can demonstrate that resort to local administrative processes would have been a useless exercise.  *See Houlton Band of Maliseet Indians v. Boyce*, 1997 ME 4, ¶ 11, 688 A.2d 908 ("When a party

administrative agencies to correct their own errors, clarify their policies, and reconcile conflicts before resorting to judicial relief." *Ne. Occupational Exch., Inc. v. Bureau of Rehab.*, 473 A.2d 406, 409 (Me. 1984) (quotation marks omitted).

[¶23] Here, Marshall's section 1983 claim that the Town's constitutional violations caused him financial injury seeks a limited administrative remedy—in the form of injunctive relief—regarding the Town's actions. As noted, there was administrative process available to Marshall through the Town that could have been pursued before resorting to judicial relief.

[¶24] The Town's Ordinance directs the CEO to, among other things, "[e]nforce the provisions of [the] Ordinance," investigate complaints, issue violation notices, "[i]nform an aggrieved party of his/her rights to appeal any decision by the Code Enforcement Officer," "provide the aggrieved party with a copy of the procedures for appealing any such decision," and participate in appeals procedures. Dexter, Me., Land Use Ordinance § 4(A)(1).

[¶25] The Dexter Board of Appeals is vested with the broad authority "[t]o hear and decide appeals where it is alleged that there is an error in *any* order, requirement, decision, or determination made by, or failure to act by, the Code

---

seeks relief that is beyond the jurisdiction of the administrative agency . . . the party need not exhaust its administrative remedies before seeking judicial relief." (quotation marks omitted)). No such demonstration is possible here. In fact, Marshall asserts that the CEO resigned less than two months after the initial "Stop Work" order and that the new CEO has lifted the impediments to developing the property.

Enforcement Officer in the enforcement or administration of [the] Ordinance." *Id.* § 5(A)(1) (emphasis added). On appeal, the Board "may affirm, affirm with conditions, or reverse the decision of the Code Enforcement Officer." *Id.* § 5(B)(5)(d).

[¶26] As evidenced by these provisions of the Ordinance, a process was readily available to Marshall to present his challenges to the Board of Appeals and thereafter to the courts if that became necessary. *Cf. Gorham v. Androscoggin Cty.*, 2011 ME 63, ¶ 22, 21 A.3d 115 ("With respect to independent claims that are not subject to Rule 80B, we have held that when direct review is available pursuant to Rule 80B, it provides the exclusive process for judicial review unless it is inadequate."); *Moreau v. Town of Turner*, 661 A.2d 677, 680 (Me. 1995) (holding that where state law—including the Rule 80B appeal process—"provides adequate redress to a plaintiff deprived of a constitutionally protected property interest, no section 1983 action will lie" (quotation marks omitted)). The use of that process could have resulted in a prompt decision on the notice of violation and could have limited or prevented any monetary damages while also eliminating the need for a judicially created injunction. Marshall chose to bypass that process and proceed directly to court.

[¶27] Ultimately, a person or entity affected by the action of a Town employee cannot claim violations of the right to use of property without first

pursuing the existing appeal process made available by the Town to remedy the alleged injury. *Cf. Ne. Occupational Exch., Inc.*, 473 A.2d 406 (discussing the exhaustion doctrine in reviewing a judgment entered in an administrative appeal).

[¶28] For the same reasons, any due process claim that could be inferred from Marshall's complaint was properly dismissed. Particularly with respect to due process, a party must pursue the process that is available before complaining of a procedural inadequacy. *Moreau*, 661 A.2d at 680.

[¶29] In sum, the Town must be given an opportunity to act in its regulatory role before it can be found to have acted in violation of the Constitution. Thus, the use of available process was an essential prerequisite to Marshall's claims. Further, although Marshall argues that the Board of Appeals could not enter an injunction, the Town could very well have withdrawn, altered, or eliminated the CEO's orders, thereby providing the very relief that Marshall sought through his complaint for injunctive relief.

C.     Equal Protection Violation

[¶30] Finally, Marshall's claim that the Town interfered with his right to equal protection failed to allege a single fact to suggest that he was treated differently than others similarly situated based on any impermissible considerations. A person alleging a violation of equal protection rights must allege that, "compared with others similarly situated, [the person] was selectively treated

. . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Tapalian v. Tusino*, 377 F.3d 1, 5 (1st Cir. 2004) (second alteration in original) (emphasis omitted) (quotation marks omitted); *see also Cent. Me. Power Co. v. Pub. Utils. Comm'n*, 1999 ME 119, ¶ 24 & n.12, 734 A.2d 1120, *cert. denied*, 528 U.S. 1077 (2000) (holding that the equal protection guarantees of the Maine and United States Constitutions are coextensive). If a person alleges selective treatment as an individual and not a member of a specific class, that "class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action." *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013); *see Polk v. Town of Lubec*, 2000 ME 152, ¶¶ 15-16, 756 A.2d 510.

[¶31] Conclusive generalities asserting that the plaintiff was treated differently will not suffice. *Gianfrancesco*, 712 F.3d at 640; *see Polk*, 2000 ME 152, ¶¶ 15-16, 756 A.2d 510 (holding that vague allegations about a CEO's reasons for opposing a permit application were insufficient to support an equal protection claim). Rather, the complaint must allege facts that could demonstrate "that the challenged decision . . . had a discriminatory effect and that it was motivated by a discriminatory purpose." *Polk*, 2000 ME 152, ¶ 14, 756 A.2d 510 (quotation marks omitted).

[¶32] Marshall's complaint fails altogether to include allegations concerning how similarly situated property owners were treated by the Town, and his complaint does not report any "gross abuse of power," *Tapalian*, 377 F.3d at 6 (quotation marks omitted), that could demonstrate malicious or bad faith intent to injure him, *id.* at 5. Without alleging any facts that would, if proved, demonstrate that he was treated differently from others similarly situated based on an impermissible discriminatory purpose, the complaint does not survive the motion to dismiss.

## IV. CONCLUSION

[¶33] Because Marshall (A) failed to allege that the CEO's actions were taken pursuant to a municipal policy, (B) failed to pursue available administrative relief, and (C) failed to allege that he faced discriminatory treatment as compared with others who were similarly situated, we affirm the court's dismissal of Marshall's complaint for injunctive relief and damages.

The entry is:

Judgment affirmed.

**On the briefs:**

Erik M. Stumpfel, Esq., and Anthony V. Trask, Esq., Rudman Winchell, Bangor, for appellant Gerald Marshall

Frederick F. Costlow, Esq., and Heidi J. Hart, Esq., Richardson, Whitman, Large & Badger, Bangor, for appellee Town of Dexter

**At oral argument:**

Erik M. Stumpfel, Esq., for appellant Gerald Marshall

Frederick F. Costlow, Esq., for appellee Town of Dexter

Penobscot County Superior Court docket number CV-2013-81
FOR CLERK REFERENCE ONLY