STATE OF MAINE                          SUPERIOR COURT
YORK, SS.                               CIVIL ACTION
                                        DOCKET NO. CV-15-292

EVELYN FERLAND,                    )
        Plaintiff,                )
                                  )
v.                                )
                                  )
DAVID L. FERLAND, et al.,         )
        Defendants.               )
                                  )

## ] ORDER GRANTING DEFENDANT AND COUNTERCLAIM PLAINTIFF DAVID L. FERLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT SEEKING AN ORDER DIRECTING EXPUNGEMENT OF HIS CENTRAL REGISTRATION DEPOSITORY RECORDS REGARDING THE MATTERS RELATED TO THE ALLEGATIONS AGAINST HIM IN THIS CASE

After review and pursuant to Me. R. Civ. P. 56 and FINRA Rule 2080, Defendant and Counterclaim Plaintiff David L. Ferland's *Motion for Partial Summary Judgment Seeking an Order Directing FINRA to Expunge Portions of His Central Registration Depository Records Relating to the Plaintiff's Claims in This Case* (the "Motion") is hereby GRANTED, *inter alia*, for the reasons set forth below.

Pursuant to Rule 56(a) of the Maine Rules of Civil Procedure, FINRA Rule 2080(b)(1)(A)-(B), and other supporting authority, Defendant and Counterclaim Plaintiff David L. Ferland ("Ferland") moved for partial summary judgment relating to his counterclaim specifically with regard to his request for an order directing the Financial Industry Regulatory Authority ("FINRA") to expunge his Central Registration Depository ("CRD") records maintained by FINRA, including BrokerCheck records, of all matters related to Plaintiff Evelyn

Ferland's Complaint in this action. Ferland has a CRD No. 5034103, which is his reference and registration number with FINRA. Ferland previously moved for partial summary judgment relating to his counterclaim directed to Plaintiff and Counterclaim Defendant, Evelyn Ferland ("Mrs. Ferland"), on the issue of whether the allegations Mrs. Ferland made against him were clearly erroneous or false and whether he was involved with an alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds so that he could seek a waiver of the obligation to name FINRA as an additional party in any future expungement proceeding before this Court. The Court granted Ferland's prior partial summary judgment motion and entered related findings by order dated February 16, 2017 ("February 16th Order"). Based on the undisputed facts as set forth in the Court's Findings of Fact incorporated into its February 16th Order: (1) Ferland did not improperly cause Mrs. Ferland to transfer funds to him and to related businesses in the approximate amount of $721,408; (2) Ferland did not transfer property owned by DE Properties LLC, in which he and Mrs. Ferland had an ownership interest, to DL Properties LLC, in which Ferland and Larry Schoff had an ownership interest, and did not otherwise deprive Mrs. Ferland of revenues from DE Properties LLC; (3) Ferland did not convince Mrs. Ferland to take out a home equity loan to loan him and related businesses approximately $40,000; (4) Ferland did not purchase or convince Mrs. Ferland to purchase an annuity in the amount of $40,000 that she did not want, did not understand, and that was otherwise not appropriate for her; and (5) the allegations against Ferland are clearly erroneous or false and he was not involved with an investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds. Given these factual and legal conclusions, Ferland is entitled, pursuant to this court's rules and equitable powers and specifically to FINRA Rule 2080(b)(1)(A)-(B), to an order from this court directing that FINRA expunge any and all

2

allegations referring or relating to Mrs. Ferland's Complaint in this action, and this action, from Ferland's records maintained by FINRA at the CRD, including BrokerCheck.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Ferland is a registered representative of the securities industry and brings this claim for relief for the sole purpose of seeking an order directing FINRA to expunge any and all allegations referring or relating to Mrs. Ferland's Complaint in this action, and this action, from Ferland's records maintained by FINRA at the CRD based upon the prior factual and legal conclusions made by this Court through its February 16th Order.

As part of its duties in licensing securities brokers through authority devolved from the federal Securities and Exchange Commission and also as a record-keeper on behalf of each state's and certain territories' securities regulatory authorities, FINRA maintains a database known as the CRD and a public website known as "BrokerCheck" which contain, among other things, information about complaints made by customers against registered representatives and any litigation or arbitration proceedings arising from them. FINRA requires that certain information concerning such matters be reported to FINRA for inclusion in the CRD and BrokerCheck. However, FINRA has also established a procedure for registered representatives such as Ferland to obtain expungement from the CRD and BrokerCheck of customer complaints or cases that have been resolved for which there is no need for continuing public disclosure, as is the case with regard to the claims brought by Mrs. Ferland in this action.

Although FINRA is the entity that maintains the CRD and BrokerCheck, FINRA requires that expungement of a complaint can only be accomplished by means of an Order of a court of

3

competent jurisdiction. FINRA Rule 2080(a). After entry of the February 16th Order, Ferland moved through subsequent Motion for an order directing expungement and sought waiver from FINRA from the obligation of naming FINRA as an additional party to the expungement proceeding. Pursuant to FINRA Rule 2080(b)(1), FINRA may waive the obligation to participate in an expungement proceeding if it determines that the expungement relief is based on affirmative judicial findings that, among other things, the allegations against the person whose records will be expunged are clearly erroneous or that person was not involved in the investment related sales practice violation. *See* FINRA Rule 2080(b)(1)(B). Those findings are set forth in the Court's February 16th Order. Expungement is an equitable remedy within this Court's general jurisdiction. Through this action, Ferland sought for the Court to apply the factual and legal record created, *inter alia*, through the February 16th Order, to satisfy the standard for expungement. This is now the second step of a two-step process. First, Ferland sought and obtained an order through his initial Motion for Partial Summary Judgment establishing the factual and legal bases to request expungement. Now, through subsequent Motion, and upon notice to FINRA, Ferland seeks for the Court to enter an order directing FINRA to expunge Mrs. Ferland's complaint from Ferland's CRD record maintained by FINRA. As set forth in the February 16th Order, Mrs. Fernald's allegations against Ferland were factually erroneous and legally insufficient and did not establish that Ferland was involved in a securities sales practice or other violation and, therefore, satisfy the standard for expungement set forth in FINRA Rule 2080, and otherwise, and should not be reflected in Ferland's public securities industry record.

A. FINRA Rule 2080 and the Central Registration Depository.

FINRA is a self-regulatory organization registered with the SEC. *In re Lickiss*, No. C-11-1986, 2011 WL 2471022, at *1 (N. D. CA June 22, 2011). "'It is responsible for regulatory

4

oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation . . . .'" *Id.* (quoting *Sacks v. S.E.C.*, 635 F.3d 1121, 1122 (9th Cir. 2011.). One of FINRA's duties is to "establish and maintain a system for collecting and retaining registration information" regarding registered representatives such as Mr. Hartmann. 15 U.SC. § 78o-3(i)(1)(A). The CRD is the database used by FINRA to "store, among other information, information about regulatory, enforcement an arbitration actions taken against registered representatives and other securities personnel" in accordance with FINRA's obligation pursuant to 15 U.SC. § 78o-3(i)(1)(A). *In re Lickiss*, 2011 WL 2471022, at *1. In addition to establishing the CRD, FINRA has also promulgated a rule, FINRA Rule 2080, related to the process of expungement of information in the CRD. *Id.* A registered representative often seeks expungement of information listed in the CRD after the dispute with a customer is resolved where the information or allegations listed are found to be erroneous or the representative was not involved in the alleged violation. *See, e.g.,* FINRA Rule 2080; *Lickiss*, 2011 WL 2471022. Inaccurate information found in a representative's CRD records not only defeats the regulatory purpose of the CRD, but may be harmful to a representative's ability to attract and retain new clients or continue with their career. *See, e.g., id.* at *2. Under FINRA Rule 2080(a), "[m]embers or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement . . . ." FINRA Rule 2080(a). FINRA Rule 2080(b) also requires that a member or person seeking expungement must notify FINRA of such. *Id.* Upon notification, FINRA has the opportunity to consider whether it should participate in the proceeding. FINRA Rule 2080(b). *Id.*

FINRA Rule 2080(b)(1) provides:

5

(b) Members or associated persons petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents unless this requirement is waived pursuant to subparagraph (1) or (2) below:

> (1) Upon request, FINRA may waive the obligation to name FINRA as a party if FINRA determines that the expungement relief is based on affirmative judicial or arbitral findings that:
>
> (A) the claim, allegation or information is factually impossible or clearly erroneous;
>
> (B) the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds; or
>
> (C) the claim, allegation or information is false.

*Id.*

Ferland asked FINRA to waive its obligation to participate in this expungement proceeding, because the Court found in its February 16th Order, including its incorporated findings, consistent with FINRA Rule 2080(b)(1)(A)-(B), that the allegations against Ferland are clearly erroneous and/or false and that Ferland was not involved in alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds.

B. Procedural Background.

On or about December 21, 2015, Mrs. Ferland filed this action against Ferland and several other parties, alleging various breach of fiduciary duty, breach of contract, and misrepresentation claims relating to several alleged business transactions between and among Mrs. Ferland, Ferland, and the other defendants. Verified Complaint. The Complaint specifically alleges in ten counts the following causes of action and/or requests for relief: (1) an Accounting; (2) Undue Influence; (3) Restitution to Prevent Unjust Enrichment; (4) Constructive Trust; (5)

6

Breach of Fiduciary Duty; (6) Fraud; (7) Negligent Misrepresentation; (8) Conversion; (9) Breach of Contract; and (10) a Restraining Order. *Id.* After filing of the Complaint, Mrs. Ferland and Ferland agreed to a resolution of their dispute and dismissal of all claims against Ferland, as well as against all other defendants. Ferland denies all of the substantive allegations made by Mrs. Ferland and denies engaging in any wrongdoing. The parties came to a resolution of this case which has involved payment and/or restructuring of certain loans that Mrs. Ferland made to Ferland. While Mrs. Ferland has now dismissed all of her claims, Ferland filed his counterclaim so that the Court could consider, pursuant to Rule 56 and FINRA Rule 2080(b)(1)(A)-(B), summary judgment on the issue of whether the allegations regarding Ferland were clearly erroneous and/or false and whether Ferland was involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds. The Court considered Ferland's initial partial summary judgment on that issue and entered its February 16th Order in Ferland's favor.[1] Ferland now seeks an order directing FINRA to expunge references to this matter from his CRD and related records.

## II.     ARGUMENTS & AUTHORITIES

### A.   Summary Judgment Standard Pursuant to Rule 56.

Ferland is entitled to partial summary judgment on his counterclaim entering an order directing that FINRA expunge reference of this action and all related matters from his CRD records. A party is entitled to summary judgment when the record shows that there is no genuine dispute of material fact and the party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c)(3). A fact is considered material if it has the "potential to affect the outcome of the suit." Deutsche Bank Nat. Trust Co. v. Raggiani, 2009 ME 120, ¶ 5, 985 A.2d 1, 3. A genuine issue of

---

[1] The Court through its February 16th Order incorporated by reference Ferland's Rule 56 Statement of Material Facts filed with his earlier partial summary judgment motion and makes them the Court's findings of fact (hereinafter "FOF").

material fact exists when the factfinder must "choose between competing versions of the truth." Dyer v. Dep't of Transp., 2008 ME 106, ¶ 14, 951 A.2d 821, 825. The court determines whether there is a genuine issue of material fact by comparing the parties' statements of material facts and corresponding record references. Corey v. Norman, Hanson & DeTroy, 1999 ME 196, ¶ 8, 742 A.2d 933, 938. To survive a motion for summary judgment, an opposing party must "identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." Polk v. Town of Lubec, 2000 ME 152, ¶ 11, 756 A.2d 510, 513. A party may not simply "rely on conclusory allegations or unsubstantiated denials" to avoid summary judgment. Id. In this action, there are no material facts in dispute; the Court has found the relevant facts through its February 16th Order; and Ferland is entitled to summary judgment as a matter of law.

B. FINRA Rule 2080.

As described above, FINRA Rule 2080 governs the process of expungement of information in the CRD and its related BrokerCheck Report. FINRA Rule 2080 also requires that a member or person seeking expungement must notify FINRA of such. FINRA. Rule 2080(b). Upon notification, FINRA has the opportunity to consider whether it should participate in the proceeding. FINRA Rule 2080(b) and may waive the obligation to name FINRA as an additional party if the expungement is based on affirmative judicial findings that:

(A) the claim, allegation or information is factually impossible or **clearly erroneous**;

(B) **the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds**; or

(C) the claim, allegation or information is **false**.

FINRA Rule 2080(b)(1) (emphasis added).

8

Ferland made that request to FINRA in connection with filing this Motion because the Court's February 16th Order, including its related findings, satisfy FINRA's Rule 2080 standard. [FINRA elected not to participate/elected to participate.]

C. The Undisputed Facts Show that the Allegations Against Ferland Are Erroneous and/or False and that He Was Not Involved in an Investment-Related Sales Practice Violation, Forgery, Theft, Misappropriation or Conversion <u>of Funds</u>.

The allegations in Mrs. Ferland's complaint in this action satisfy FINRA's Rule 2080(b) standard for expungement because the Court has already made findings through its February 16th Order that they are (a) factually impossible or clearly erroneous; and/or (b) did not involve Ferland in investment-related sales practice violations, forgery, theft, misappropriation or conversion of funds; and/or (c) are otherwise false. FOF ¶¶ 1-24. The presence of Mrs. Ferland's complaint and related allegations on Ferland's public securities record have impacted and will continue to impact negatively his business and professional life. FOF ¶ 25.

To summarize what Mrs. Ferland alleges in her Complaint in this case, she claimed that Ferland acted improperly as her financial advisor in connection with four matters: (1) that Ferland caused her to improperly transfer funds to himself and to related businesses in the approximate amount of $721,408; (2) that Ferland transferred property owned by DE Properties LLC, in which she and Ferland both had an ownership interest, to DL Properties LLC, in which Ferland and Larry Schoff had an ownership interest, and otherwise deprived her of revenues from DE Properties LLC; (3) that Ferland convinced her take out a home equity loan and to loan him and related businesses approximately $40,000; and (4) that Ferland either purchased or convinced her to purchase an annuity in the amount of $40,000 that she did not want, did not understand, and that was otherwise not appropriate for her. FOF ¶ 13. Through its February 16th Order and as set forth in greater detail below, the Court has already found facts leading to the

9

conclusion that Mrs. Ferland's allegations regarding each of these four points are factually impossible or clearly erroneous or otherwise false, and that Ferland's actions in connection with Mrs. Ferland did not constitute investment-related sales practice violations, forgery, theft, misappropriation or conversion of funds. The conclusions detailed below, previously found through the Court's February 16th Order, collectively provide the bases for this order directing FINRA to expunge the relevant portions of Ferland's CRD and related records.

1. *Ferland did not cause Mrs. Ferland to improperly transfer funds to himself and to related businesses in the approximate amount of $721,408.*

Ferland did not cause Mrs. Ferland to improperly transfer funds to himself and to related businesses in the approximate amount of $721,408. Rather, Mrs. Ferland freely loaned Ferland and one of his business partners approximately that amount as part of a commercial real estate transaction that was evidenced by a promissory note; secured by a life insurance policy on Ferland's life; and resulted in scheduled payments to Mrs. Ferland. This loan was not related to Ferland's capacity as a financial advisor to his mother. And, the funds that Ferland borrowed were not otherwise used by him on Mrs. Ferland's behalf as her fiduciary. FOF ¶¶ 14 - 17, 24. And, such a transaction was not unusual. Mrs. Ferland has been engaged in lending and related business transaction with her children for many years, including with Ferland with whom she had operated one substantial business and had invested in real estate prior to the transaction at issue. FOF ¶¶ 9-10.

2. *Ferland did not transfer property owned by DE Properties LLC, in which Mrs. Ferland and Ferland both had an ownership interest, to DL Properties LLC, in which Ferland and Larry Schoff had an ownership interest or otherwise deprived her of revenues from DE Properties LLC*

Ferland did not transfer property owned by DE Properties LLC, in which Mrs. Ferland and Ferland both had an ownership interest, to DL Properties LLC, in which Ferland and Larry

Schoff had an ownership interest or otherwise deprive her of revenues from DE Properties LLC. What Mrs. Ferland alleges did not happen. FOF ¶ 19. Mrs. Ferland specifically alleges that Ferland never paid to her rental or other payments to due to her from DE Properties LLC. This is not true. Mrs. Ferland received rental payments for 24 months from the property located at 214 Cottage Place, York, Maine, in the approximate amount of $6,018.72. FOF ¶ 19.

3. *Ferland did not convince Mrs. Ferland to take out a home equity loan to loan him and related businesses approximately $40,000*

Ferland did not convince Mrs. Ferland to take out a home equity loan to loan him and related businesses approximately $40,000. For reasons unrelated to Ferland, Mrs. Ferland took out a home equity loan, and used proceeds from that loan for various home improvements on her house. After the improvements, she had some funds left over and decided to loan them to Ferland. A practice she had engaged in with several of her children over the years for numerous purposes. From Mrs. Ferland's original loan to Ferland in the Spring of 2013 of approximately $40,000, Ferland made regular payments, with a final payment of the remaining balance made on March 29, 2016. That loan is now paid in full. This loan was not related to Ferland's capacity as a financial advisor to his mother. And, the funds that Ferland borrowed were not otherwise used by him on Mrs. Ferland's behalf as her fiduciary. FOF ¶¶ 9, 10 and 22.

4. *Ferland did not purchase or convince Mrs. Ferland to purchase an annuity in the amount of $40,000 that she did not want, did not understand, and that was otherwise not appropriate for her.*

11

Ferland did not purchase or convince Mrs. Ferland to purchase an annuity in the amount of $40,000 that she did not want, did not understand, and that was otherwise not appropriate for her. Mrs. Ferland purchased an annuity from Allianz on May 21, 2007, not Ameriprise as she alleged in her complaint. This was the second annuity that she had purchased. On or about August 5, 2011, she cashed in the annuity, received a profit of $5,273.81, and also received back her deposit of $40,000. Documents reflecting this transaction, include the annuity distribution request that she signed, including a fax transmission number on that document indicating it was sent from her home fax machine, and communication regarding and the check from Allianz that she cashed. FOF ¶ 21. Mrs. Ferland also alleges that Ferland was acting as her financial advisor in connection with all of the matters about which she complains. That is not true. There are only two sets of transactions in which Ferland acted as Mrs. Ferland's financial advisor: (1) the purchase of the Allianz annuity; and (2) the purchase of certain Ameriprise CD's and mutual funds in June and July of 2014, about which Mrs. Ferland has made no complaint. Mrs. Ferland did not loan Ferland money in his capacity as a financial advisor but rather did so as her son and all other dealings between them were for business matters unrelated to Ferland's role as a financial advisor. Furthermore, the brokerage and financial firms with which Ferland has been affiliated during the period addressed in Mrs. Ferland's complaint, Ameriprise Financial Services, Inc., and Invest Financial Corporation, had nothing to do with the business dealings between Mrs. Ferland and Ferland. FOF ¶ 23.

## III.    CONCLUSION

For all of these foregoing reasons, the Court grants Ferland's Motion and directs FINRA to expunge all reference to Mrs. Ferland's allegations, including this action, from the Central Registration Depository Records of Ferland (CRD No. 5034103), including but not limited to BrokerCheck.

Dated at Alfred, Maine this ____2nd____ day of ____August____, 2017.

_____
Justice, Superior Court

ENTERED ON THE DOCKET ON: 8/2/17

13

ALFSC-CV-2015-292


ATTORNEY FOR PLAINTIFF:

CHRISTOPHER HAWKINS, ESQ.
DEVINE MILLIMET & BRANCH PA
111 AMHERST STREET
MANCHESTER  NH  03101


ATTORNEYS FOR DEFENDANT:

DIANNE RICARDO, ESQ.
JEREMY WALKER, ESQ.
MCLANE MIDDLETON PA
PO BOX 326
MANCHESTER  NH  03105