STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-504

PAMELA G. ARGEREOW,        )
                           )
        Plaintiff          )
                           )
v.                         )
                           )
VERNE M. WEISBERG, M.D. and )
MERCY HOSPITAL,            )
                           )
        Defendants.        )

ORDER ON DEFENDANT MERCY
HOSPITAL'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT

REC'D CUMB CLERKS OF(
DEC 21 '17 AM10:48

Before the Court is Defendant Mercy Hospital's ("Mercy") motion to dismiss Plaintiff's second amended complaint pursuant to Maine Rule of Civil Procedure 12(b)(6). A hearing was held on this motion on September 6, 2017. For the following reasons, Mercy's motion is granted.

I. Background

The facts relevant to this motion are largely contained in the Court's order on Dr. Weisberg's motion to dismiss Plaintiff's first amended complaint. *See Argereow v. Weisberg,* 2016 Me. Super. LEXIS 96 (May 10, 2016). Since the issuance of the Court's May 10, 2016 order, Plaintiff has filed a second amended complaint which, *inter alia*, adds Mercy as a defendant. Specifically, Plaintiff adds Mercy to the existing claims against Dr. Weisberg for intentional infliction of emotional distress and violation of the Maine Whistleblower Protection Act, and Plaintiff alleges a cause of action against Mercy entitled "Maine Health Security Act Request for Access to Professional Competence Review Records and for Abuse of Any Privilege." (Second Am. Compl. Count II, Count VI, Count VII.)

II. Standard of Review

The court grants a dismissal when the complaint fails "to state a claim upon which relief can be granted." M.R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim tests the

Plaintiff–Robert Kline, Esq.
Defendant Weisberg–Joanne Simonelli, Esq.
Defendant Mercy–Thad Zmistowski, Esq.

legal sufficiency of a complaint. *State v. Weinschenk*, 2005 ME 28, ¶ 10, 868 A.2d 200. The sufficiency of a complaint is a question of law. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676. On a motion to dismiss for failure to state a claim, the facts are not adjudicated. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141. The court reviews the material allegations in the complaint in the light most favorable to the plaintiff to determine whether the plaintiff would be entitled to relief pursuant to some legal theory. *Bean*, 2008 ME 18, ¶ 7, 939 A.2d 676. Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that the plaintiff might prove in support of his or her claim. *Id.*

III. Discussion

    *A. Statutory immunity*

Mercy first argues that it has immunity from civil liability under 24 M.R.S. § 2511. That statute states:

> Any person acting without malice, any physician, podiatrist, health care provider, health care entity or professional society, any member of a professional competence committee or professional review committee, any board or appropriate authority and any entity required to report under this chapter are immune from civil liability:
>
> 1. Reporting. For making any report or other information available to any board, appropriate authority, professional competence committee or professional review committee pursuant to law;
>
> 2. Assisting in preparation. For assisting in the origination, investigation or preparation of the report or information described in subsection 1; or
>
> 3. Assisting in duties. For assisting the board, authority or committee in carrying out any of its duties or functions provided by law.

24 M.R.S. § 2511. Mercy contends subsections 2 and 3 grant it immunity for processing any information it may have received from Dr. Weisberg during the credentialing process. As Mercy

is indisputably a health care entity, it is eligible for immunity as a matter of law for any action described by § 2511. *See Strong v. Brakeley*, 2016 ME 60, ¶ 6, 137 A.3d 1007.

The Court has reservations regarding § 2511's applicability to Mercy in this case. In *Strong v. Brakeley*, the Law Court rejected an argument that § 2511(3)'s "assisting" provision only applies when a physician is a member of the board, authority, or committee. *Strong*, 2016 ME 60, ¶ 11, 137 A.3d 1007. The Court reasoned "[t]he statute is intended to protect the acts of the person providing assistance; Strong, by focusing on the acts of board, authority, or committee members themselves, twists subsection 3 to instead protect the acts of the committee *to whom the assistance is given*." *Id.* The Court further noted "Strong's reading of section 2511 … would limit its application to only a select few, and would discourage the type of reporting that section 2511 was instead meant to encourage." *Id.* ¶ 14. Although the Court does not expressly state that the statute does not provide immunity for the party "to whom the assistance is given," the Court's analysis contemplates that § 2511(3) requires both a person providing assistance and a party who is the recipient of the assistance, and the Court at least implies the statute is intended to protect only the person providing assistance, not the recipient of the assistance. In this case, Dr. Weisberg was the provider of the assistance, and Mercy was the recipient of the assistance. Thus, under the interpretation of § 2511(3) in *Strong*, Mercy is arguably not granted immunity for receiving assistance from Dr. Weisberg.

Regarding § 2511(2), it is not clear that Mercy's participation clearly fits within this subsection either. This subsection is entitled "Assisting in preparation" and provides immunity "[f]or assisting in the origination, investigation or preparation of the report or information described in subsection 1." Although the Law Court has not yet provided an interpretation of this

subsection, one reasonable interpretation would be that this subsection is intended to prevent the reporting party's conduct that occurs *before* the report is made to the recipient of the report.

In this case, Dr. Weisberg – the reporting party – "originat[ed]" and "prepar[ed]" the report prior to making the report to Mercy. While Mercy argues it assisted in the "investigation" of the report, it is arguable that an investigation conducted by a recipient after receiving a report is not the type of "investigation" contemplated by subsection 2. Rather, given that subsection 2 is entitled "Assisting in *preparation*" and that "origination" and "preparation" of a report are activities that will always occur before a report is made, the Legislature may have intended that the "investigation" provided immunity by this subsection likewise refers only to an investigation conducted by the person making the report prior to the time the report is made. Under that interpretation, subsection 2 does not provide immunity to Mercy.

Having determined that Mercy is not unquestionably entitled to immunity, the Court will consider Mercy's alternative arguments as to why Plaintiff's claims against Mercy should be dismissed.

### B. Intentional infliction of emotional distress

To state a claim for intention infliction of emotional distress, a plaintiff must allege:

1. the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [the defendant's] conduct;
2. the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;
3. the actions of the defendant caused the plaintiff's emotional distress; and
4. the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Lyman v. Huber*, 2010 ME 139, ¶ 16, 10 A.3d 707. It is for the court to decide, as a matter of law, whether the conduct alleged may reasonably be regarded as so extreme and outrageous to permit recovery. *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842.

The "extreme and outrageous" conduct Mercy is alleged to have committed is "processing false information." (Second Am. Compl. ¶ 69.) Plaintiff has not alleged Mercy knew the information it received from Dr. Weisberg was false. As such, the only reasonable inference to be drawn from Plaintiff's complaint is that Mercy received negative information from Dr. Weisberg and, as a result, warned Plaintiff that she would be denied credentialing if she did not withdraw her application. (*Id.* ¶¶ 37, 44, 46.) Mercy even provided Plaintiff the courtesy of recommending she withdraw her application so that the denial of her credentialing would not be reported to the Maine State Board of Nursing. (*Id.* ¶ 37.) As noted in Mercy's motion to dismiss, deciding not to extend credentials to a prospective employee based on negative information received from a former employer is not "extreme or outrageous;" to the contrary, it is behavior that would be expected of a prospective employer who has received negative information about a prospective employee. (*See* Mot. Dismiss 9-10.) As a matter of law, Mercy's conduct as alleged in Plaintiff's complaint was not "so extreme and outrageous as to exceed all possible bounds of decency." Therefore, this count must be dismissed.

### C. Maine Whistleblower Protection Act

The Maine Whistleblower Protection Act (WPA) states, in relevant part: "No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because … [t]he employee is requested to participate in an investigation, hearing or inquiry held by that public body, or in a court action…." 26 M.R.S. § 833(C). Mercy argues this statute is

inapplicable because Mercy was never Plaintiff's employer. Plaintiff admits in her second amended complaint that "Mercy did not conclude the hiring process...." (Second Am. Compl. ¶ 97.) The Law Court has stated that the WPA only applies to "then existing employment." *DiCentes v. Michaud*, 1998 ME 227, ¶ 18, 719 A.2d 509. As a matter of law, Mercy was not Plaintiff's employer for the purposes of the WPA, and therefore Plaintiff may not maintain an action against Mercy under the WPA.

> D. *Maine Health Security Act request for access to professional competence review records*

Plaintiff's complaint demands access to all of Mercy's competence review records pertaining to Plaintiff pursuant to 24 M.R.S. § 2510-B(2). (Second Am. Compl. ¶¶ 103-104.) In its February 8, 2017, the Court determined Plaintiff is not entitled to these records under 24 M.R.S. § 2510-A. *Argereow v. Weisberg*, CUMSC-CV-15-504 (Me. Super. Ct., Cumberland Cty., Feb. 8, 2017). Plaintiff's attempt to now sidestep that order is unavailing as the plain language of § 2510-B(2) is inapplicable to Plaintiff. Section 2510-B(2) provides that professional competence review records may be furnished to "the *physician* who is the subject of the professional competence review activity...." Plaintiff is a nurse, not a physician[1], and therefore, even if this section creates a viable cause of action, it provides no recourse to Plaintiff. As a matter of law, Mercy has no duty to provide these records to Plaintiff. As such, this count must be dismissed for failure to state a claim.

IV. Conclusion

For the foregoing reasons, Defendant Mercy Hospital's motion to dismiss second amended complaint is GRANTED. Counts II, VI, and VII of Plaintiff's second amended

---

[1] Under 24 M.R.S. § 2502(3), "physician" is defined as "any natural person authorized by law to practice medicine, osteopathic medicine or veterinary medicine within this State."

complaint are dismissed with prejudice as to Mercy. The Clerk is directed to incorporate this

Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 12/21/17

Lance E. Walker, Justice
Maine Superior Court



STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-504

PAMELA G. ARGEREOW,           )
                              )
          Plaintiff           )
                              )
v.                            )     ORDER ON DEFENDANT VERNE
                              )     M. WEISBERG, M.D.'S MOTION TO
                              )     DISMISS SECOND AMENDED
VERNE M. WEISBERG, M.D. and    )     COMPLAINT
MERCY HOSPITAL,                )
                              )
          Defendants.         )

Before the Court is Defendant Verne M. Weisberg, M.D.'s ("Dr. Weisberg") motion to dismiss Plaintiff's second amended complaint pursuant to Maine Rule of Civil Procedure 12(b)(6). A hearing was held on this motion on September 6, 2017. For the following reasons, Dr. Weisberg's motion is granted.

REC'D CUMB CLERKS OF
DEC 21 '17 AM10:46

I. Background

The facts relevant to this motion are largely contained in the Court's order on Dr. Weisberg's motion to dismiss Plaintiff's first amended complaint. *See Argereow v. Weisberg*, 2016 Me. Super. LEXIS 96 (May 10, 2016). Since the issuance of the Court's May 10, 2016 order, Plaintiff has filed a second amended complaint which, *inter alia*, adds Mercy Hospital ("Mercy") as a defendant and alleges that Dr. Weisberg or someone acting on his behalf abused any conditional privilege afforded by 24 M.R.S. § 2511 by contacting Mercy to comment on Plaintiff's professional background, thereby discouraging Mercy from hiring Plaintiff. (Second Am. Compl. ¶¶ 4, 44-46.)

Following the Court's order on the original motion to dismiss, the remaining claims against Dr. Weisberg include interference with prospective economic advantage, intentional infliction of emotional distress, and violation of the Maine Whistleblower Protection Act. Dr.

1 of 6

Plaintiff–Robert Kline, Esq.
Defendant Weisberg–Joanne Simonelli, Esq.
Defendant Mercy–Thad Zmistowski, Esq.

Weisberg contends these claims must be dismissed because the Maine Health Security Act, 24 M.R.S. § 2511, grants him absolute immunity from civil liability. (Mot. Dismiss 2.) He further asserts that the previously-dismissed claims for defamation, negligent infliction of emotional distress, and slander per se are likewise barred by § 2511 and, therefore, the entirety of Plaintiff's second amended complaint should be dismissed with prejudice. (*Id.* n.2.)

II. Standard of Review

The court grants a dismissal when the complaint fails "to state a claim upon which relief can be granted." M.R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *State v. Weinschenk*, 2005 ME 28, ¶ 10, 868 A.2d 200. The sufficiency of a complaint is a question of law. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676. On a motion to dismiss for failure to state a claim, the facts are not adjudicated. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141. The court reviews the material allegations in the complaint in the light most favorable to the plaintiff to determine whether the plaintiff would be entitled to relief pursuant to some legal theory. *Bean*, 2008 ME 18, ¶ 7, 939 A.2d 676. Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that the plaintiff might prove in support of his or her claim. *Id.*

III. Discussion

The Maine Health Security Act provides:

Any person acting without malice, any physician, podiatrist, health care provider, health care entity or professional society, any member of a professional competence committee or professional review committee, any board or appropriate authority and any entity required to report under this chapter are immune from civil liability:

1. Reporting. For making any report or other information available to any board, appropriate authority, professional competence committee or professional review committee pursuant to law;

2. **Assisting in preparation.** For assisting in the origination, investigation or preparation of the report or information described in subsection 1; or

3. **Assisting in duties.** For assisting the board, authority or committee in carrying out any of its duties or functions provided by law.

24 M.R.S. § 2511. Dr. Weisberg contends subsection 1 and 3 grant him immunity for any comments he may have made to Mercy. As there is no dispute that Dr. Weisberg is a medical doctor (*see* Second Am. Compl. ¶ 2) and therefore a physician, he is eligible for immunity as a matter of law for any action described by § 2511. *See Strong v. Brakeley*, 2016 ME 60, ¶ 6, 137 A.3d 1007.

Dr. Weisberg argues any comments he may have made to Mercy qualify as a "report or other information" or as "assisting" Mercy to carry out its credentialing functions. Thus, he reasons, these activities would fit squarely within subsections 1 and 3 if Mercy qualifies as a "board, appropriate authority, professional competence review committee or professional review committee." Dr. Weisberg argues Mercy is a "professional competence committee" under 24 M.R.S. § 2502(4), which includes a health care entity "engaging in professional competence review activity." 24 M.R.S. § 2502(4)(A).

Plaintiff generally argues in opposition to Dr. Weisberg's motion that his reading of § 2511 is overly broad and that a bad faith exception should be read into the statute. However, the Court finds this argument is foreclosed by *Strong v. Brakeley*. That case clearly holds that § 2511 has no requirement that physicians must act without malice to be entitled to immunity. *Strong*, 2016 ME 60, ¶ 12, 137 A.3d 1007. Even *Lalonde v. Cent. Me. Med. Ctr.*, which Plaintiff attempts to cite in support of her position, reaffirms that § 2511 grants "immunity from any suit claiming harm by defamation, slander, breach of contract, interference with an expectancy, or any other cause of action seeking damages or other remedies based on [a] report" to a qualified

recipient. *Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 13, 155 A.3d 426. Through these cases, the Law Court has repeatedly interpreted § 2511 as providing a broad grant of immunity for conduct that may otherwise be tortious. Because § 2511 protects even malicious behavior, the alleged retaliatory, false, and intimidating nature of Dr. Weisberg's comments is irrelevant. (*See* Second Am. Compl. ¶¶ 37, 45-46.)

Under a plain language reading of § 2511, accepting as true Plaintiff's allegations that Dr. Weisberg made malicious comments to Mercy which caused Mercy to advise Plaintiff to either withdraw her application or risk disqualification for credentialing (Second Am. Compl. ¶¶ 37, 44-46), the Court finds that Dr. Weisberg is entitled to immunity. Dr. Weisberg is indisputably a physician. Because Plaintiff's complaint admits that her application was compromised at the credentialing phase (*see* Second Am. Compl. ¶¶ 37, 42-46), the only inference that can be drawn from her allegations is that Dr. Weisberg's comments were made in the context of Mercy's credentialing process. As such, Dr. Weisberg's comments qualify as, at a minimum, "information" provided to Mercy (satisfying § 2511(1)), and they were made for the purposes of "assisting" Mercy to carry out its credentialing function (satisfying § 2511(3)). Finally, because it was a health care entity engaging in professional competence review activity (*e.g.*, credentialing) when it received Dr. Weisberg's comments, Mercy is a qualifying professional competence committee pursuant to 24 M.R.S. § 2502(4)(A). As such, Dr. Weisberg's comments, whatever they may have been, fall within both subsections 1 and 3 of § 2511, entitling him to immunity for any civil liability incurred in connection with his comments.

The Court declines to comment on Plaintiff's assertion that, under Dr. Weisberg's interpretation, "there is no communication that a physician could make to a hospital ... which is not shielded by" § 2511. (Pl.'s Opp'n to Mot. Dismiss 3.) The Court only finds such immunity is

sufficiently broad to cover any comments that may have been made by Dr. Weisberg to Mercy during its credentialing process as alleged in Plaintiff's second amended complaint.

Furthermore, each of Plaintiff's claims against Dr. Weisberg is founded on the comments allegedly made by Dr. Weisberg to Mercy. This is distinguishable from *Lalonde*, in which the Law Court noted the trial court had properly differentiated the plaintiff's claim for contractual or statutory indemnity from a tort claim that would be barred by § 2511 immunity. *See Lalonde*, 2017 ME 22, ¶ 9, 155 A.3d 426 ("[T]he court concluded … the allegation that CMMC reported Lalonde's termination to the Board, thus triggering the Board's actions against Lalonde, was not an essential fact of his indemnification claim.").

Dr. Weisberg's provision of information to Mercy is an essential fact of each of Plaintiff's claims against Dr. Weisberg. His comments constitute the alleged malicious interference in Plaintiff's interference with prospective economic advantage claim. (*See* Second Am. Compl. ¶¶ 61-66.) His "actions in communicating … false and misleading information" is the basis of Plaintiff's claim for intentional infliction of emotional distress. (*See* Second Am. Compl. ¶¶ 68-73.) His "statements referenced in Paragraphs 44 through 52" of Plaintiff's complaint also form the foundation of her whistleblower claim. (*See* Second Am. Compl. ¶¶ 93-99.) *Lalonde* makes clear that the previously-dismissed claims for defamation, slander, and negligent infliction of emotional distress based on defamation and slander, would also be barred by § 2511. *Lalonde*, 2017 ME 22, ¶ 13, 155 A.3d 426. Because the Court finds Dr. Weisberg is immune from any civil liability incurred by making the alleged comments, each count against Dr. Weisberg in Plaintiff's second amended complaint must be dismissed.

IV. Conclusion

For the foregoing reasons, Defendant Verne M. Weisberg, M.D.'s motion to dismiss second amended complaint is GRANTED. Counts I through VI of Plaintiff's second amended complaint are dismissed with prejudice as to Dr. Weisberg.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___12/21/17___

Lance E. Walker, Justice
Maine Superior Court

*Me*

STATE OF MAINE
Cumberland. ss. Clerk's Office

MAY 10 2016

RECEIVED

STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, SS.                                     CIVIL ACTION
                                                    DOCKET NO. CUMSC-CV-15-504

PAMELA G. ARGEREOW,                    )
                                       )
              Plaintiff,               )
                                       )
       v.                              )            ORDER ON DEFENDANT'S MOTION
                                       )            TO DISMISS AMENDED COMPLAINT
                                       )
VERNE E. WEISBERG, M.D.,               )
                                       )
              Defendant.               )

Before the court is Defendant Verne E. Weisberg, M.D.'s motion to dismiss the amended

complaint for failure to state a claim upon which relief can be granted. Based on the following,

the motion to dismiss is granted in part and denied in part.

## I.    BACKGROUND

The following allegations are set forth in the amended complaint. Defendant Verne E.

Weisberg, M.D. is the owner and operator of the Center for Weight Management & Wellness,

LLC ("CWMW"). (Am. Compl. 3.) Plaintiff Pamela G. Argereow was employed as a registered

nurse and a nurse practitioner at CWMW from February 1, 2012, until October 29, 2014. (*Id.* ¶¶

7, 20.)

On September 23, 2014, Plaintiff testified under subpoena as a witness at an

Unemployment Commission hearing on an unemployment claim brought by Bonnie Fusco

arising from the termination of Ms. Fusco's employment the Plastic Surgery Center P.A., an

entity related to CWMW, and also owned and operated by Defendant. (*Id.* ¶¶ 13-14.) Citing

testimony from Plaintiff, the administrative hearing officer found Plastic Surgery Center's

assertion that Ms. Fusco was terminated for misconduct and discourteous behavior to be

unfounded and charged Ms. Fusco's unemployment benefits to the Plastic Surgery Center. (*Id.* ¶ 14.)

According to Plaintiff, by a letter dated September 23, 2014, she was offered a job as a nurse practitioner at Mercy Hospital's Wound Healing Center. (*Id.* ¶ 15.) Plaintiff completed Mercy Hospital's pre-employment procedures and was given a prospective start date of November 10, 2014. (*Id.* ¶¶ 16-19, 24.) Plaintiff gave CWMW her two-weeks notice on October 15, 2014. (*Id.* ¶ 20.) Plaintiff's final day of work at CWMW was October 29, 2015. (*Id.*) On October 31, 2014, Plaintiff disclosed to Defendant that she was leaving CWMW to work at Mercy Hospital's Wound Healing Center. (*Id.* ¶ 23.)

On November 7, 2014, a representative from Mercy Hospital's human resources informed Plaintiff that there was an issue with her medical credentialing. (*Id.* ¶ 25.) That same day, Plaintiff met with Dr. Russell, Mercy Hospital's Chief of Surgery. (*Id.* ¶ 27.) Dr. Russell informed Plaintiff that Defendant was a member of Mercy Hospital's Board. (*Id.* ¶ 30.) On November 10, 2014, Plaintiff received a phone call from a Mercy Hospital representative suggesting Plaintiff withdrawal her application. (*Id.* ¶ 31.) On November 11, 2014, Plaintiff spoke with Dr. Rusk, who warned Plaintiff that if she pursued her application, it would be denied on the basis that she did not qualify for credentialing, which would be reported to the Maine State Board of Nursing. (*Id.* ¶¶ 34-36.) Plaintiff withdrew her application. (*Id.* ¶ 39.)

On or about June 1, 2015, Joan Lorenson, CWMW's Chief Operating Officer, received a notice from the Maine Unemployment Commission, indicating that CWMW was being charged by the State for Plaintiff's unemployment benefits. (*Id.* ¶¶ 44, 47.) When Lorenson questioned Defendant about the charge, Defendant allegedly told Lorenson that, when he found out where Plaintiff was going to be employed, he made a phone call and cost Plaintiff her job at Mercy

2

Hospital because she had testified against Defendant at Fusco's unemployment claim hearing. (*Id.* ¶ 49.)

Plaintiff filed a complaint against Defendant on November 10, 2015. Defendant filed his initial motion to dismiss for failure to state a claim on December 1, 2015. On December 22, 2015, Plaintiff filed her opposition to the motion to dismiss and her amended her complaint. Defendant filed a motion to dismiss the amended complaint on December 30, 2015. Defendant filed an opposition to the motion to dismiss the amended complaint, which incorporated by reference her initial opposition to the motion to dismiss, on January 20, 2016. Defendant timely replied.

Plaintiff's six-count amended complaint contains claims for tortious interference with a prospective economic advantage (Count I), intentional infliction of emotional distress (Count II), defamation (Count III), negligent infliction of emotional distress (Count IV), slander per se (Count V), and a claim for relief under the Maine Whistleblower's Protection Act ("MWPA") (Count VI). (Am. Compl. ¶¶ 58-95.)

## II. STANDARD OF REVIEW

The court grants a dismissal when the complaint fails "to state a claim upon which relief can be granted." M.R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *State v. Weinschenk*, 2005 ME 28, ¶ 10, 868 A.2d 200. The sufficiency of a complaint is a question of law. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676. On a motion to dismiss for failure to state a claim, the facts are not adjudicated. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141. The court reviews the material allegations in the complaint in the light most favorable to the plaintiff to determine whether the plaintiff would be entitled to relief pursuant to some legal theory. *Bean*, 2008 ME 18, ¶ 7, 939 A.2d 676.

3

Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that the plaintiff might prove in support of his or her claim. *Id.*

Most civil actions must merely meet the notice pleading standard, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." M.R. Civ. P. 8(a); *Bean*, 2008 ME 18, ¶ 8, 939 A.2d 676. "The allegations need to give the defendant 'fair notice' of the claim and the ground on which it rests, and demonstrate that the claimant has more than a speculative right to relief." *Pascoe v. Johnson Controls, Inc.*, 2010 Me. Super. LEXIS 131, at *4 (Dec. 2, 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, all averments of fraud or circumstances constituting fraud must be plead "with particularity." M.R. Civ. P. 9(b). Knowledge and other conditions of a person's state of mind may be averred generally. *Id.*

## III. ANALYSIS

### A. *Defamation and Slander Per Se*

Defendant asserts that Plaintiff's defamation (Count III) and slander per se (Count V) claims are the foundation upon which all of Plaintiff's other claims are based. (Def. Mot. Dismiss Am. Compl. 7.) Defendant argues that Plaintiff has failed to identify a single false statement made by Defendant about Plaintiff. (*Id.* at 10.) Accordingly, Defendant argues that Plaintiff's defamation, slander per se, and all other claims must be dismissed for failure to state a claim. (*Id.* at 1-2, 10.)

A claim for defamation consist of the following: (1) an unprivileged publication by the defendant to a third-party; (2) consisting of a false and defamatory statement of or concerning the plaintiff; (3) fault amounting to at least negligence by the defendant; and (4) the existence of special damages caused by the publication. *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (citing

4

Restatement (Second) of Torts § 558 (1977)). In order to be actionable, the false and defamatory statement must be an explicit or implied assertion of fact, not a mere opinion. *Id.* However, an opinion that implies the existence of an undisclosed fact may be actionable. *Id.*

A defamatory statement constitutes slander per se if the words "on their face without further proof or explanation injure the plaintiff in his business or occupation." *Ramirez v. Rogers*, 540 A.2d 475, 478 (Me. 1988). If a defamatory statement constitutes slander per se, the plaintiff may recover on their defamation claim without the need to prove special damages. *Id.*

Because proof that a statement is true is always an affirmative defense to defamation, the defendant is "entitled to know precisely what statement is attributed to him." *Picard v. Brennan*, 307 A.2d 833, 834-35 (Me. 1973). Thus, in order to recovery for defamation, the "material words, those essential to the charge made, must be [strictly] proved as alleged." *Id.* However, the plaintiff need not strictly prove as alleged any "unimportant, connecting or descriptive words." *Id.* The court may allow some latitude with respect to the precise phrasing and context of the alleged defamatory statement. *Pascoe*, 2010 Me. Super. LEXIS 131, at *5.

In *Pascoe v. Johnson Controls*, the plaintiff's complaint alleged that defendants falsely informed certain third-parties that the plaintiff doctored and/or falsified time cards, that the plaintiff falsified the hours he worked, that plaintiff was a liar, and/or that plaintiff was dishonest in his business dealings. *Pascoe*, 2010 Me. Super. LEXIS 131, at *6-7. The complaint did not quote or allege the exact words or phrasing used by defendants. *Id.* at *7. Nevertheless, the court found that the plaintiff's allegation contained sufficient "material words" to put the defendants on notice regarding what statements were attributed to them. *Id.* at *7-8. The court held that the plaintiff's amended complaint sufficiently stated a claim for defamation. *Id.* at *8.

5

In contrast, in *Nadeau v. Hunt*, the plaintiffs' amended complaint included "a list of persons to whom, through statements, 'facial gestures,' and other actions, [the defendants] allegedly publicized false and reckless views about [the plaintiff's] integrity, fairness, and competence." *Nadeau v. Hunt*, 2006 Me. Super. LEXIS 58, at *16-17 (Mar. 23, 2006). The amended complaint failed to identify the specific the statements that defendants allegedly made. *Id.* The plaintiffs argued they were entitled to discovery under Maine Rule of Civil Procedure 27 because "some of the conduct of which they complain is 'still unknown but certainly discoverable.'" *Id.* at *18 (emphasis omitted). The court disagreed, stating, "Rule 27 is a method of perpetuating testimony and 'is not a discovery device to assist plaintiffs to discover facts and frame a complaint.'" *Id.* at *19 (citing *In re Petition of Sen*, 1999 ME 83 ¶ 5, 730 A.2d 680). The court further stated, "plaintiffs are not entitled to file a lawsuit alleging unspecified instances of defamation and then undertake discovery in the hope that they can find some evidence to substantiate their apparent suspicion that the defendants must have said something derogatory about [the plaintiff] to someone." *Id.* Because the plaintiffs did not identify the precise statements that were alleged to be defamatory, the court held that the amended complaint failed to state a claim. *Id.* at *16-19.

Here, Plaintiff asserts that, on October 31, 2014, Plaintiff disclosed to Defendant that she was leaving CWMW to work at Mercy Hospital. (Am. Compl. ¶ 23.) On November 7, 2014, a representative from Mercy Hospital informed Plaintiff that there was an issue with her credentialing. (*Id.* ¶ 25.) Three days later, Plaintiff received a phone call from a Mercy Hospital representative suggesting Plaintiff withdrawal her application. (*Id.* ¶ 31.) On November 11, 2014, Dr. Rusk warned Plaintiff that if she pursued her application, it would be denied on the

6

basis that she did not qualify for credentialing, which would be reported to the licensing board.

(*Id.* ¶¶ 34-36.)

Plaintiff's amended complaint alleges:

41.     On information and belief, Defendant contacted representatives of Mercy between October 31 and November 7, 2014, discouraging Mercy from employing Plaintiff.

. . .

43.     On information and belief, statements were made by Defendant to representatives of Mercy which were false and intimidating and made with the intention of and had the effect of interfering with Plaintiff's prospective employment.

. . .

49.     … Defendant stated to Lorenson that Plaintiff had quit CWMW and, when he found out where she was going to be employed and because she had helped a former employee, Fusco, with her unemployment claim…, Defendant made a phone call and cost Plaintiff her job at Mercy.

(*Id.* ¶¶ 41, 43, 49.)    Plaintiff's amended complaint contains no other allegations regarding Defendants' statements.

Unlike *Pascoe v. Johnson Controls*, Plaintiff's amended complaint fails to allege the "material words" that were defamatory.   Though Plaintiff is not required to allege the exact phrasing or context of the defamatory statements, Plaintiff is required to allege the "material words" essential to the charge in order to put Defendant on notice as to what statements have been attributed to him.   Like *Nadeau v. Hunt*, Defendant's allegedly defamatory statements are unspecified.

Like the plaintiffs in *Nadeau v. Hunt*, Plaintiff asserts that dismissal is inappropriate at this stage in the proceedings because discovery has not been conducted.   (Pl. Opp'n to Def. Mot. Dismiss Am. Compl. 3.)   However, as the court stated in *Nadeau v. Hunt*, Plaintiff is not entitled to file a lawsuit alleging unspecified instances of defamation and then undertake discovery in hope of finding some evidence to confirm her suspicion.

7

Therefore, because Plaintiff's amended complaint fails to allege any "material words" essential to her claims for defamation and slander per se, Plaintiff's amended complaint fails to state claims for defamation and slander per se upon which relief can be granted.

B.    *Negligent Infliction of Emotional Distress*

Defendant argues that, because Plaintiff's defamation claim fails, her claim for negligent infliction of emotional distress (Count IV) must also fail. (Def. Mot. Dismiss Am. Compl. 10-11.) Defendant also argues that Plaintiff has failed to allege sufficient facts of severe emotional distress in support of her claim. (*Id.*)

Like most negligence torts, to sustain a claim for negligent infliction of emotional distress the plaintiff must establish that the defendant owed a duty to the plaintiff; the defendant breached that duty; and the breach caused harm to the plaintiff. *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. However, unlike most tort actions for physical injuries, there is no general duty to avoid negligently causing emotional harm to others. *Id.* The Law Court has recognized a duty to reasonably avoid emotional harm to others in very limited circumstances: (1) bystander liability actions, (2) circumstances where a special relationship exists, and (3) where the defendant has committed another tort. *Id.* ¶ 19.

Here, there are no allegations of bystander liability or a special relationship. Plaintiff's amended complaint makes clear that her claim for negligent infliction of emotional distress is predicated solely on her claim for defamation. (Am. Compl. ¶¶ 77-83.) Plaintiff further acknowledges this in her opposition to the motion to dismiss. (Pl. Opp'n to Def. Mot. Dismiss 7.) Therefore, because Plaintiff's amended complaint fails to state claim for the underlying tort, Plaintiff's amended complaint also fails to state a claim for negligent infliction of emotional distress.

8

Although neither party addresses the issue, tortious interference cannot serve as the underlying claim for NIED. "When there can be no recovery for emotional harm caused by the separate tort, ... a plaintiff may not circumvent that restriction by alleging negligent infliction in addition to the separate tort." *Curtis v. Porter,* 2001 ME 158, ¶ 19, 784 A.2d 18. Damages for interference with a prospective economic advantage are limited to the amount the plaintiff would have realized but for the interference. *Harmon v. Harmon,* 404 A.2d 1020, 1024 (Me. 1979).

### C.     *Intentional Infliction of Emotional Distress*

Regarding Plaintiff's claim of intentional infliction of emotional distress (Count II), Defendant argues that claim must also be dismissed because Plaintiff has failed to allege sufficient facts to support a finding that Defendant's conduct was so extreme and outrageous to warrant recovery. (Def. Mot. Dismiss Am. Compl. 11-12.) Defendant also argues that Plaintiff has failed to allege sufficient facts of severe emotional distress. (*Id.* at 11.)

A claim for intentional infliction of emotional distress consist of the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that severe emotional distress would result; (2) the defendant's conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;" (3) the defendant's conduct caused the plaintiff's severe emotional distress; and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Lougee Conservancy v. CitiMortgage, Inc.,* 2012 ME 103, ¶ 25, 48 A.3d 774 (internal citation and quotation marks omitted).

It is within the trial court's discretion to decide in the first instance whether, as a matter of law, "defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Id.* ¶ 26. However, in circumstances where reasonable people may differ as to whether a defendant's conduct is sufficiently extreme or outrageous, the question is better left for a jury to decide. *Bratton v. McDonough*, 2014 ME 64, ¶ 23, 91 A.3d 1050.

Regarding the fourth element, the plaintiff "must show that the distress caused would be unbearably severe to an ordinarily-sensitive plaintiff." *Lougee Conservancy*, 2012 ME 103, ¶ 26, 48 A.3d 774. General feelings of being upset are not substantial enough to constitute emotional distress "so severe that no reasonable person could be expected to endure it." *Id.*

Here, Plaintiff has set forth sufficient allegations to sustain a claim for intentional infliction of emotional distress at this stage in the proceeding. First, Plaintiff's amended complaint sufficiently alleges extreme and outrageous conduct on the part of Defendant. Plaintiff alleges:

> 49. ... Defendant stated to Lorenson that Plaintiff had quit CWMW and, when he found out where she was going to be employed and because she had helped a former employee, Fusco, with her unemployment claim ..., Defendant made a phone call and cost Plaintiff her job at Mercy.

(Am. Compl. ¶ 49.) Viewing the allegation in the light most favorable to Plaintiff, irrespective of whether Defendant's alleged statements to Mercy Hospital were false or defamatory, reasonable people could differ as to whether Defendant's alleged conduct was extreme or outrageous. Assuming Plaintiff's allegation are proven at trial, a rational jury could conclude that Defendant's call to Mercy Hospital in order to prevent Plaintiff from being hired in retaliation for Plaintiff's testimony against Defendant at an unemployment claim hearing constitutes extreme and outrageous conduct.

10

Second, Plaintiff's amended complaint sufficiently alleges that she suffered severe emotional distress. Plaintiff avers that, as a result of being forced to withdraw her application, she was unemployed and suffered eight months of lost wages as a result of Defendant's interference with her employment. (Am. Compl. ¶¶ 51, 55.) Plaintiff avers that the loss of earnings had a significant impact and imposed hardship on Plaintiff and her family. (*Id.* ¶ 56.) Plaintiff further avers that the loss of employment strained Plaintiff's marriage and prompted Plaintiff and her husband to undergo counseling to address Plaintiff's feelings of lack of self-worth, loss of confidence, and depression. (*Id.* ¶ 57.) Viewing the allegation in the light most favorable to Plaintiff, a jury could conclude that the emotional distress suffered by Plaintiff was "so severe that no reasonable person could be expected to endure it." Therefore, Plaintiff's amended complaint sets forth sufficient allegations that, if proven, could support a claim for intentional infliction of emotional distress.

More importantly at this nascent stage in the litigation, a dismissal would be inappropriate despite however remote a successful claim of IIED appears to be on the four corners of the pleadings. Measuring the odds of success is not the analytical exercise the court employs in determining whether the complaint alleges enough to state a claim for potential recovery. When viewed in the context of that extremely low threshold, the claim of IIED survives a challenge under Rule 12(b)(6). Whether it may survive in the light of a summary judgment record or at trial are not presently considerations of the court.

D.     *Interference with a Prospective Economic Advantage*

Defendant also argues that Plaintiff's claim for tortious interference with a prospective economic advantage must also be dismissed for failure to state a claim because Plaintiff has

11

failed to allege that Defendant interfered through fraud or intimidation. (Def. Mot. Dismiss A. Compl. 12.)

To sustain a claim for tortious interference with a prospective economic advantage, the plaintiff must assert the following elements: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages. *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400.

A defendant interferes through fraud by (1) making a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing a third-party to act or refrain from acting in reliance; and (5) the third-party justifiably relies on the representation to the detriment of the plaintiff. *Rutland v. Mullen*, 2002 ME 98, ¶ 14, 798 A.2d 1104. Maine Rule of Civil Procedure 9(b) provides that all averments of fraud or circumstances constituting fraud must be plead "with particularity." M.R. Civ. P. 9(b). Knowledge and other conditions of a person's state of mind may be averred generally. *Id.*

Regarding interference through intimidation, the Law Court has stated that intimidation is not limited to "frightening a person for coercive purposes." *Currie*, 2007 ME 12, ¶ 31, 915 A.2d 400 (citation omitted). Intimidation exists "wherever a defendant has procured a breach of contract by 'making it clear' to the party with which the plaintiff had contracted that the only manner in which that party could avail itself of a particular benefit of working with defendant would be to breach its contract with plaintiff." *Id.* (citation omitted). The fact finder may infer intimidation from circumstantial evidence. *Id.* ¶¶ 32-35.

12

Plaintiff's amended complaint fails to allege "with particularity" sufficient allegation of interference by fraud. A previously discussed, Plaintiff alleges:

> 41. On information and belief, Defendant contacted representatives of Mercy between October 31 and November 7, 2014, discouraging Mercy from employing Plaintiff.
>
> ...
>
> 43. On information and belief, statements were made by Defendant to representatives of Mercy which were false and intimidating and made with the intention of and had the effect of interfering with Plaintiff's prospective employment.
>
> ...
>
> 49. ... Defendant stated to Lorenson that Plaintiff had quit CWMW and, when he found out where she was going to be employed and because she had helped a former employee, Fusco, with her unemployment claim..., Defendant made a phone call and cost Plaintiff her job at Mercy.

(Am. Compl. ¶¶ 41, 43, 49.) Plaintiff's amended complaint does not state with particularity the alleged false representations made by Defendant or whether those false representations constitute material facts. Therefore, Plaintiff has failed state a claim for tortious interference with a prospective economic advantage by fraud.

However, the amended complaint sets forth sufficient allegations to sustain a claim for interference by intimidation. According to the complaint, Plaintiff disclosed to Defendant on October 31, 2014, that she was leaving CWMW to work at Mercy Hospital. (Am. Compl. ¶ 23.) On November 7, 2014, a representative from Mercy Hospital informed Plaintiff that there was an issue with her credentialing. (*Id.* ¶ 25.) That same day, Plaintiff met with Dr. Russell. (*Id.* ¶ 27.) Dr. Russell informed Plaintiff that Defendant was a member of Mercy Hospital's board. (*Id.* ¶ 30.) Three days later, Plaintiff received a phone call from a Mercy Hospital representative suggesting Plaintiff withdrawal her application. (*Id.* ¶ 31.) On November 11, 2014, Dr. Rusk warned Plaintiff that if she pursued her application, it would be denied on the basis that she did not qualify for credentialing, which would be reported to the licensing board. (*Id.* ¶¶ 34-36.)

13

Later, Defendant allegedly told Lorenson that, when he found out where Plaintiff was going to be employed, he made a phone call and cost Plaintiff her job at Mercy Hospital because she had testified against Defendant at Fusco's unemployment claim hearing. (*Id.* ¶ 49.) Viewing these allegations in the light most favorable to Plaintiff, a jury could infer that Defendant intimidated Mercy Hospital into rescinding its job offer to Plaintiff. Therefore, Plaintiff's amended complaint sets forth sufficient allegations that, if proven, could support claim for tortious interference with a prospective economic advantage by intimidation.

### E. *Maine Whistleblower Protection Act*

Defendant asserts that Plaintiff's MWPA claim fails because it is based on the same unspecified allegations as her other claims. (Def. Mot. Dismiss Am. Compl. 15.) Defendant also asserts that Plaintiff's allegations do not give rise to a MWPA action because the statute only applies to existing employment, not future employment. (*Id.*)

Under the MWPA, "[n]o employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because... [t]he employee is requested to participate in an investigation, hearing or inquiry held by that public body, or in a court action." 26 M.R.S. § 833(1)(C). To sustain a claim under the MWPA, the plaintiff must establish: (1) the plaintiff was an employee engaged in a "protected activity;" (2) the employee suffered an "adverse employment action;" and (3) a causal nexus exists between the activity and the adverse employment action. *LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 19, 909 A.2d 629.

Because an employer may not discharge, threaten, or otherwise discriminate against an employee for participating in an investigation, hearing, inquiry, or court action, Plaintiff's

14

testimony at an unemployment claim hearing clearly constitutes a protected activity under the MWPA. (Am. Compl. ¶¶ 13-14); *see* 26 M.R.S. § 833(1)(C).

Generally, an employee suffers an "adverse employment action" when either: (a) the employee has been deprived of "something of consequence" as a result of a demotion, a pay reduction, or termination; or (b) the employer has withheld "an accouterment of the employment relationship." *LePage*, 2006 ME 130, ¶ 20, 909 A.2d 629 (internal quotation marks and citation omitted). However, the MWPA limits the types "adverse employment actions" that are actionable under the statute. *See Id.* ¶¶ 20-21. Under the MWPA, only a discharge or threats or discrimination by the employer that "adversely affect the employee's compensation, terms or other conditions of employment" constitute an actionable "adverse employment action." *Id.* ¶ 20.

The Law Court has also held that, under § 833(1) of the MWPA, actions by an employer regarding future employment are not protected by MWPA. *DiCentes v. Michaud*, 1998 ME 227, ¶ 18, 719 A.2d 509. In *DiCentes v. Michaud*, the plaintiff asserted that an employer's refusal to provide the plaintiff with a letter of recommendation for prospective employers constituted a violation of the MWPA. *Id.* ¶ 6. The Law Court held that the employer's refusal to provide a letter of recommendation for future employment did not fall with the protection of the MWPA because it "did not affect the compensation, terms, conditions, location, or privileges of [the plaintiff's] then existing employment." *Id.* ¶ 18.

In this case, Plaintiff avers that she was offered a position at Mercy Hospital by letter dated September 23, 2014. (Am. Compl. ¶ 15.) Plaintiff completed new employee intake and pre-placement screening at Mercy Hospital on October 6, 2014. (*Id.* ¶¶ 18-19.) Plaintiff gave her two-weeks notice to Defendant on October 15, 2014. (*Id.* ¶ 20.) Plaintiff's last day of work

15

at CWMW was October 29, 2014. (*Id.*) Plaintiff's projected start date at Mercy was originally November 10, 2014. (*Id.* ¶ 24.) At some unspecified time, Plaintiff was introduced to the staff at the Wound Healing Center as new employee. (*Id.* ¶ 28.) Plaintiff believed that there were no remaining contingencies to her employment at Mercy Hospital. (*Id.*) On November 7, 2014, Plaintiff was informed that her start was being pushed back because of medical credentialing issues. (*Id.* ¶ 25.) On November 10 and 11, 2014, Plaintiff was told to withdrawal her application or it would be denied because of credentialing issues, which would be reported to the licensing board. (*Id.* ¶¶ 32, 34-36.) Defendant allegedly told Lorenson that, when he found out where Plaintiff was going to be employed, hew made a phone call and cost Plaintiff her job at Mercy Hospital because she had testified against Defendant at Fusco's unemployment claim hearing. (*Id.* ¶ 49.)

Here, because Plaintiff left Defendant's employ at the CWMW on October 29, 2014, to begin her employment at Mercy Hospital on November 10, 2014, Plaintiff's employment at Mercy Hospital could be viewed as her future employment at the time Defendant contacted Mercy Hospital. If Plaintiff's employment at Mercy Hospital constituted her future employment, then Plaintiff did not suffer an adverse employment action under the MWPA. *See DiCentes*, 1998 ME 227, ¶ 18, 719 A.2d 509.

However, because Plaintiff was offered a job on September 23, 2014, completed new employment intake and screening, was introduced to staff as a new employee, and left the CWMW after October 29, 2014, Plaintiff's employment at Mercy Hospital could constitute her existing employment at the time Defendant contacted Mercy Hospital. Furthermore, Plaintiff alleges that Defendant is a member of Mercy Hospital's Board. (Am. Compl. ¶ 30.) Thus, Defendant may be agent of Mercy Hospital, Plaintiff's then existing employer, under the

16

MWPA's definition of an "employer." 26 M.R.S. §832(2) (stating that "Employer" includes an agent of an employer). Therefore, viewing the allegations in the amended complaint in the light most favorable to Plaintiff, Defendant's call to Mercy Hospital could constitute an adverse employment action affecting Plaintiff's then existing employment at Mercy Hospital by an agent of Mercy Hospital.

Plaintiff has also set forth sufficient allegations of a causal nexus between the protected activity and the adverse employment action. As previously discussed, Defendant allegedly told Lorenson that, when he found out where Plaintiff was going to be employed, he made a phone call and cost Plaintiff her job at Mercy Hospital because she had testified against Defendant at Fusco's unemployment claim hearing. (Am. Compl. ¶ 49.) Therefore, Plaintiff's complaint sets forth sufficient allegations that, if proven, could support a claim under the MWPA.

## IV. CONCLUSION

Based on the foregoing, Defendant Verne E. Weisberg, M.D.'s motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted is granted in part and denied in part. Defendant's motion to dismiss is granted as to Counts III, IV, and V. Plaintiff's claims for defamation, negligent infliction of emotional distress, and slander per se are dismissed without prejudice. Defendant's motion is denied as to Counts I, II, and VI for tortious interference with a prospective economic advantage, intentional infliction of emotional distress, and the Maine Whistleblower's Protection Act.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

17

Date:    May 10, 2016

Lance E. Walker
Justice, Superior Court

18